Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOBBIN LO,<br><br>               Plaintiff,<br><br>      v.<br><br>CADENCE BANCORPORATION, PAUL B. MURPHY, JR., WILLIAM B. HARRISON, JR., JOSEPH W. EVANS, J. RICHARD FREDERICKS, VIRGINIA A. HEPNER, PRECIOUS WILLIAMS OWODUNNI, MARC J. SHAPIRO, KATHY N. WALLER, J. THOMAS WILEY, JR., and BANCORPSOUTH BANK.<br><br>               Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1)  Breach of Fiduciary Duties<br>(2)  Aiding and Abetting Breach of Fiduciary Duties<br>(3)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(4)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Dobbin Lo ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this action against Cadence Bancorporation ("Cadence" or the "Company"), and the Company's Board of Directors (the "Board" or the "Individual Defendants") for breaches of fiduciary duty as a result of efforts to sell the Company to BancorpSouth Bank ("Parent" or "BancorpSouth" and together with Cadence, the Board, the "Defendants") as a result of an unfair process for an unfair price, and to enjoin an upcoming stockholder vote on an all stock proposed transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an April 12, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, Cadence will become an indirect wholly-owned subsidiary of Parent, a subsidiary of the BancorpSouth.   Cadence public stockholders will receive, in exchange for each share of Cadence common stock they own, 0.70 shares of BancorpSouth Class A common stock. Additionally, the agreement allows for a one-time special cash dividend to CADE shareholders of $1.25 per share in conjunction with the closing of the merger. BancorpSouth shareholders will own approximately 55% and Cadence shareholders will own approximately 45% of the combined company.

3.      Thereafter, on May 27, 2021, Cadence filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Preliminary Proxy Statement describes an insufficient process in which the Board rushed through a sales process in which the Board failed to negotiate a collar mechanism to keep the merger consideration within a range of reasonableness.

5.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Cadence without first taking steps to ensure that Plaintiff would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or BancorpSouth without regard for Plaintiff and Cadence public stockholders.   Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff as a Cadence stockholder.

6.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.     In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on May 27, 2021 with the SEC in an effort to solicit Plaintiff to vote his Cadence shares in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in breach of the Defendants' fiduciary duties. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Cadence and BancorpSouth, provided by Cadence and BancorpSouth to the Company's financial advisors Goldman  & Co. LLC ("Goldman Sachs") and J.P. Morgan Securities LLC ("J.P. Morgan"), Piper Sandler & Co. ("Piper Sandler"), and to BancorpSouth's financial advisor Keefe, Bruyette & Woods, Inc. ("KBW"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Goldman Sachs, J.P. Morgan, and KBW and provided to the Board

8.     Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff.

9.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction or,

in the event the Proposed Transaction is consummated, to recover damages resulting from the breaches of fiduciary duties by Defendants.

## PARTIES

10.     Plaintiff is a citizen of California and, at all times relevant hereto, has been a Cadence stockholder.

11.     Defendant Cadence is a regional financial holding company with $18.7 billion in assets as of December 31, 2020.  Cadence is incorporated under the laws of the State of Delaware and has its principal place of business at 2800 Post Oak Boulevard, Suite 3800 Houston, TX. Shares of Cadence common stock are traded on the NYSE under the symbol "CADE."

12.     Defendant Paul B. Murphy, Jr. ("Murphy") has been a Director of the Company at all relevant times.  In addition, Murphy serves as the Company's Chairman of the Board and Chief Executive Officer ("CEO").

13.     Defendant  William B. Harrison, Jr. ("Harrison") has been a director of the Company at all relevant times. In addition, Harrison serves and the Company's Lead Director.

14.     Defendant Joseph W. Evans ("Evans") has been a director of the Company at all relevant times. In addition, Evans serves as the Vice Chairman of the Company Board.

15.     Defendant J. Richard Fredericks ("Fredericks") has been a director of the Company at all relevant times.

16.     Defendant Virginia A. Hepner ("Hepner") has been a director of the Company at all relevant times.

17.     Defendant Precious Williams Owodunni ("Owodunni") has been a director of the Company at all relevant times.

18.     Defendant Marc J. Shapiro ("Shapiro") has been a director of the Company at all relevant times.

19.     Defendant Kathy N. Waller ("Waller") has been a director of the Company at all relevant times.

20.     Defendant J. Thomas Wiley, Jr. ("Wiley") has been a director of the Company at all relevant times.

21.     Defendants identified in ¶¶ 12 - 20 are collectively referred to as the "Individual Defendants."

22.     Defendant BancorpSouth is a leading regional bank headquartered in Tupelo, Mississippi with approximately $24 billion in assets operating approximately 305 full-service branch locations as well as additional mortgage, insurance, and loan production offices in Alabama, Arkansas, Florida, Louisiana, Mississippi, Missouri, Tennessee, and Texas.  Shares of BancorpSouth common stock are traded on the NYSE under the symbol "BXS."

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

26.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Cadence and owe the Company the duties of due care, loyalty, and good faith.

27.     By virtue of their positions as directors and/or officers of Cadence, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Cadence to engage in the practices complained of herein.

28.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

> a.  act with the requisite diligence and due care that is reasonable under the circumstances;
>
> b.  act in the best interest of the Company;
>
> c.  use reasonable means to obtain material information relating to a given action or decision;
>
> d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the Company and the fulfillment of any other roles or their personal affairs;
>
> e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and
>
> f.  disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the Company.

29.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Cadence, are obligated to refrain from:

> a.     participating in any transaction where the directors' or officers' loyalties are divided;
>
> b.     participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

       c.        unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

30.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Cadence, Plaintiff and the other public stockholders of Cadence, including their duties of loyalty, good faith, and due care.

31.     As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for his Cadence common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### Company Background

32.     Cadence, headquartered in Houston, Texas, is a regional financial holding company with $18.7 billion in assets as of December 31, 2020. Its wholly owned subsidiary, Cadence Bank, N.A., operates 98 branch locations in Alabama, Florida, Georgia, Mississippi, Tennessee and Texas, and provides corporations, middle-market companies, small businesses and consumers with a full range of innovative banking and financial solutions. Cadence Bank's services and products include commercial and business banking, treasury management, specialized lending, asset-based lending, commercial real estate, SBA lending, foreign exchange, wealth management, investment and trust services, financial planning, retirement plan management, personal and business insurance, consumer banking, consumer loans, mortgages, home equity lines and loans, and credit cards. The bank's clients have access to leading-edge online and mobile solutions, interactive teller machines, and more than 55,000 ATMs.

33.     The Company reported positive financial results in its most recent Press Release for the Fourth Quarter and Full Year 2020 Financial Results. For example, the Company reported net income of $200.6 million for the quarter, up from $51.4 million the year before.

34.     Speaking on the positive results, Defendant CEO Murphy commented in the January 25, 2021 Press Release, "'We are pleased to report strong performance across multiple fronts in the fourth quarter. The provision for loan losses is down meaningfully linked quarter, as

are nonperforming and criticized assets. With the exception of hospitality, we saw broad-based improvement in credit migration, as many businesses recover, and our portfolios continue to de-risk. Our deposit franchise improved materially in 2020, and in the fourth quarter it was encouraging to see an increase in net interest margin and yields on originated loans. Our hedging activities protected the bank from the sharp decline in interest rates this year, and the unwinding of the hedge has produced a significant increase in regulatory capital, with our Common Equity Tier 1 capital ratio ending the year at 14.0%. Considering these results, we are pleased to announce proactive capital actions, including an increase of our fourth quarter dividend to $0.15 cents per share, payable in the first quarter 2021. Furthermore, we plan to retire maturing and callable debt and reactivate our share buyback program, which had been put on hold during the shutdown. Cadence operates in some of the most attractive markets in America, with a highly motivated and experienced team focused on serving our customers and driving shareholder value. While there clearly remains uncertainty in the broader environment, we are encouraged by our performance and the opportunities to further leverage our excess capital and liquidity in 2021.'"

35.     The sustained financials and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Cadence. Clearly, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

36.     Despite this potential, the Individual Defendants have caused Cadence to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

37.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

38.     Notably, while the Preliminary Statement does make reference to the "Executive Committee" of the Board, it fails to specify if this was a special committee created to run the sales

process in general, and, if so, whether all the directors assigned to sit on this committee were independent, outside directors. Nor does the Preliminary Proxy Statement indicate what specific powers this committee had in relation to approval of any potential agreement, or which specific directors sat on the Executive Committee.

39.     The Preliminary Proxy Statement does not disclose adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range.

40.     The Preliminary Proxy Statement fails to indicate the specific reasoning as to why it was necessary for Cadence to engage no less than three financial advisors, including Piper Sandler, who did not appear to provide a fairness opinion.

41.     Moreover, the Preliminary Proxy Statement fails to indicate how much compensation was paid to (or owed to) Piper Sandler for its services related to the Proposed Transaction, or what those services specifically were.

42.     The Preliminary Proxy Statement also fails to indicate if a market check for potentially interested third parties was conducted at any point during the sales process by the Board, or anyone on its behalf.

43.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and BancorpSouth, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, and if so in what way and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

44.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

45.     On April 12, 2021, BancorpSouth and Cadence issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

TUPELO, MS and HOUSTON, TX – BancorpSouth Bank (NYSE: BXS) ("BancorpSouth") and Cadence Bancorporation (NYSE: CADE) ("Cadence"), the parent company of Cadence Bank, N.A., jointly announced today that they have entered into a merger agreement under which the companies will combine in an all-stock merger with a total market value of more than $6 billion to create a leading Texas and Southeastern regional bank.

Under the terms of the merger agreement, which was unanimously approved by the Boards of Directors of both companies, Cadence shareholders will receive 0.70 shares of BXS for each share of CADE they own. Additionally, the agreement allows for a one-time special cash dividend to CADE shareholders of $1.25 per share in conjunction with the closing of the merger. BancorpSouth shareholders will own approximately 55% and Cadence shareholders will own approximately 45% of the combined company.

The company will combine the aesthetics of both brands and logos and operate as Cadence Bank. The bank will have dual headquarters in Tupelo, MS and Houston, TX, with operations centers in Tupelo, MS and Birmingham, AL as well as specialty sites in Macon, GA; Starkville, MS; and Houston, TX.

Dan Rollins will be the Chairman and Chief Executive Officer and Paul Murphy will serve as Executive Vice Chairman of the combined company. The board of directors will initially be comprised of 20 directors – 11 from BancorpSouth and nine from Cadence.

Dan Rollins commented: "Cadence has built an impressive commercial banking franchise that when combined with the strengths of our team at BancorpSouth seems to be a perfect fit. This strategic merger will allow us to expand our reach and offerings with minimal overlap in our existing branch network. Culturally speaking, our mission and values align really well together. Mergers are all about people, and what's important to note here is that our leadership teams are in sync. By joining forces, it's easy to see that we'll be able to make a significant impact on our customers and communities while driving long-term shareholder value."

"I am thrilled to partner with BancorpSouth," said Paul Murphy. "I have great respect for the franchise they have built over the last 145 years, beginning in my home state of Mississippi. The BancorpSouth community banking franchise is top tier and complements Cadence's expertise in middle-market commercial banking seamlessly. We look forward to delivering significant value to our shareholders, driven by meaningful synergies and our shared banking philosophy to put the client first. I was impressed with the team at BancorpSouth early on, and I grow even more so the more I get to know them. Like us, they really care about their people. The scale of our combined bank, our collective talent, our similar cultures and our footprint in some of the fastest-growing markets in the country have us extremely excited about the future."

Strategically Compelling for Both Organizations

- Builds a stronger banking franchise with relationship-focused financial services and better opportunities for employees, customers, communities and shareholders.

- Builds immediate scale in highly attractive markets throughout Texas and the Southeast. Creates the 5th largest bank headquartered in the combined nine-state footprint, with presence in seven of the top ten largest MSAs therein.
- Combines BancorpSouth's community banking focus with Cadence's commercial banking expertise.
- Merges two historic institutions – BancorpSouth and Cadence have 145 and 134 years of experience, respectively.
- Positions the company for continued growth. Strengthens balance sheet, capital, and reserve levels, enabling continued growth trajectory.
- Low-risk combination. Thorough mutual diligence performed on all key business areas with conservative overlay. Both companies have significant M&A integration expertise.

Financially Attractive Metrics for Shareholders

- Significant earnings per share accretion. 17% accretion to each of BancorpSouth's and Cadence's earnings per share in 2022 (assuming fully realized cost savings for illustrative purposes) and 14% if 75% of cost savings are realized.
- Tangible book value accretive. Transaction expected to be immediately accretive to tangible book value per share at close.
- Leading pro forma profitability. Among a peer group of $30-$60 billion in asset banks nationwide, the combined company is estimated to have the 3rd best return on tangible common equity and efficiency ratio, based on consensus earnings estimates.
- Robust capital and reserve coverage. Pro forma CET 1 ratio of 11.3% and ACL / loans of 2.5% estimated at the close of the transaction.

Beneficial for Customers, Communities and Employees

- Expands breadth of products and services available to customers.

- The combined companies will be able to make more investments in customized technology solutions.
- Environmental, social and governance principles are embedded in both cultures.
- Employees of the combined companies invested more than 24,000 service hours towards improving their communities.

Executive Leadership

- Dan Rollins, Chairman and Chief Executive Officer
- Paul Murphy, Executive Vice Chairman
- Chris Bagley, President
- Hank Holmes, Chief Banking Officer
- Valerie Toalson, Chief Financial Officer

Approval and Timing

The merger is expected to close in the fourth quarter of 2021, subject to the satisfaction of customary closing conditions, including the receipt of customary regulatory approvals and approvals of shareholders of each company.

### *The Inadequate Merger Consideration*

46.     Significantly, the Company's financial prospects and opportunities for future growth establish the inadequacy of the merger consideration, as well as it significantly undervalues the Company by diluting the stockholders' future interest in the surviving company. Moreover, the merger consideration does not adequately take into consideration the probable and predicted financial success of the Company.

47.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company. The proposed valuation does not adequately reflect the intrinsic value of the Company. Moreover, the valuation does not adequately take into consideration the Company's potential financial success given its growing sales pipeline and new business direction.

48.     According to the Investor Presentation for the Proposed Transaction, the merger creates one of the largest banks in Texas and the Southeast, landing at #5 with $44 billion in assets combined. In addition, the presentation covered the combined company's diversified business model, focusing on banking and financial services separately, with $29 billion in loans and $37 billion in deposits in the banking sector with both community and commercial banking. The company's financial services section represents a $468 million fee income with 26% of operating income spread amongst insurance, wealth investment advisory & trust, and the mortgage businesses.

49.     The April 23, 2021 *Birmingham Business Journal* article on the Proposed transaction covers the banks and the effects of the merger, "Cadence has $1.9 billion in local deposits and ranks sixth in the metro with a market share of 3.66%; BancorpSouth has $340 million in local deposits and ranks 17th in the metro with 0.65% market share. The combined bank would have ranked fifth based on last year's market share results… Currently, Cadence has 433 associates in the Birmingham market. BancorpSouth has 108… Murphy and Rollins said they aren't sure about branch overlap and the impact the merger will have locally. In a broader sense, the merger places the combined organization in seven of the top 10 largest metros throughout Texas and the Southeast and strengthens the banks' balance sheets, capital and reserve levels, providing a continued growth trajectory and allowing for more investments in technology and the expansion of products and services. 'The more you think about the future of banking, you can see the best-in-class operators are going to be big enough to be able to invest in technology, but they're going to be small enough where they can still have that personal touch.'"

50.     The April 12, 2021 *Barron's* article on the Proposed Transaction touched on the combination, "The combined banks will have a market value of $6 billion and a footprint covering Texas and the Southeast…In addition to marrying BancorpSouth's community banking focus with Cadence's commercial banking expertise, the two banks see other benefits of the tie-up. Earnings per share could grow by 17% in 2022 assuming cost-savings of the merger are realized by then. The combined banks are also expected to have the third best return on tangible common equity among its peer group."

51.     Clearly, the combined company's future is bright. Unfortunately, Plaintiff will be highly diluted and not able to fairly take part in that success. It is apparent from these statements and the facts set forth herein that this deal is designed to maximize benefits for BancorpSouth at the expense of Cadence and Plaintiff; Plaintiff as a Cadence shareholder was not an overriding concern in the formation of the Proposed Transaction.

*Preclusive Deal Mechanisms*

52.     The Merger Agreement contains certain provisions that unduly benefit the BancorpSouth by making an alternative transaction either prohibitively expensive or otherwise impossible.  Notably, in the event of termination, the merger agreement requires Cadence to pay up to $118 million to the BancorpSouth and/or its affiliates, if the Merger Agreement is terminated under certain circumstances.   Moreover, under one circumstance, Cadence must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

53.     The Merger Agreement also contains a "Acquisition Proposals" provision that restricts Cadence from considering alternative acquisition proposals by, *inter alia*, constraining Cadence's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide "*Acquisition Proposal.*"

54.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.   Here, the Individual Defendants agreed to provide to the BancorpSouth and/or its affiliates information in order to match any other offer, thus providing the BancorpSouth access to the unsolicited bidder's financial information and giving Parent the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of the BancorpSouth.

55.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and Plaintiff.

56.     In addition, the Merger Agreement does not include protections to ensure that the consideration payable to shareholders will remain within a range of reasonableness.    In a conventional transaction which contemplates stock of the acquiring company as a whole or part of the consideration offered in the Proposed Transaction, the parties often negotiate and implement a "floor" on the value of the consideration payable to shareholders, which establishes the lowest possible price payable.    Such transactions also often include a "collar," which establishes parameters that attempt to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders.    The Merger Agreement contains none of these protections. Thus, the consideration payable to Cadence's stockholders is not insulated from fluctuations in BancorpSouth's private shares, and stockholders are left in the precarious position of not knowing whether the consideration payable to them will decline further.

57.     Of significant note, the failure of the Board to negotiate a collar to establish parameters to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders has proved extremely prejudicial to Cadence stockholders.

58.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

59.     The breakdown of the benefits of the deal indicate that Cadence insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Cadence.

60.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, the Preliminary Proxy Statement fails to disclose an accounting of such

stock ownership or how much merger consideration they will be exchanged for upon the consummation of the Proposed Transaction.

61.    Moreover, upon the consummation of the Proposed Transaction, the Preliminary Proxy Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement.  Notably, the Preliminary Proxy Statement fails to disclose an accounting of such equity award ownership or how much merger consideration they will be exchanged for upon the consummation of the Proposed Transaction.

62.    In addition, certain employment agreements with certain Cadence executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

*Golden Parachute Compensation*

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites / benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Paul B. Murphy, Jr. | $6,268,750 | $4,195,346 | $24,000 | $10,488,096 |
| Valerie C. Toalson | $2,225,000 | $2,019,125 | $27,000 | $4,271,125 |
| Samuel M. Tortorici | $3,575,000 | $2,120,530 | $51,000 | $5,746,530 |
| Rudolph H. Holmes, IV | $2,875,000 | $1,911,959 | $54,000 | $4,840,959 |
| Edward H. Braddock | $815,683 | $660,129 | $— | $1,475,812 |

63.    The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board,

as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

64.     Thus, while the Proposed Transaction is not in the best interests of Cadence, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Preliminary Proxy Statement**

65.     On May 27, 2021, the Cadence Board and BancorpSouth caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

66.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.   Whether the Executive Committee created discussed by the Preliminary Proxy Statement was a special committee created to run the sales process;

b.   The specific powers of the aforementioned committee;

c.   The identity of the Directors who sat on the Executive Committee;

d.   Whether the directors who make up the aforementioned committee are independent outside directors;

e.   Whether the confidentiality agreements entered into by the Company with BancorpSouth differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties, and if so, in what way

f.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including BancorpSouth, would fall away;

g.  The specific reasoning as to why it was necessary for Cadence to engage no less than three financial advisors, including Piper Sandler, who did not appear to provide a fairness opinion.

h.  The specific amount of compensation was paid to (or owed to) Piper Sandler for its services related to the Proposed Transaction, or what those services specifically were

i.  The specific reasoning as to why no market check for potentially interested third parties was conducted by the Board, or anyone on its behalf, during the sales process;

j.  The specific reasoning as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range;

k.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Cadence's Financial Projections*

67.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for Cadence provided by Cadence and BancorpSouth management and relied upon by Goldman Sachs, J.P. Morgan and KBW in their analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

68.     The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Cadence and BancorpSouth's management provided to the Board, Goldman Sachs, J.P. Morgan, and KBW.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

69.     With regard to the "*Cadence Standalone*" projections prepared by Cadence Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

        a.  ROATCE (%), including all underlying necessary metrics used to calculate this metric.

70.     With regard to the "*Cadence Consensus Street Estimates*" projections prepared that BancorpSouth management directed KBW should utilize, the Preliminary Proxy Statement fails to disclose material line items for the following metrics and/or assumptions:

        a.  The specific inputs and assumptions used to determine the utilized estimated 5.0% long-term growth rate for earnings and 3.0% long-term growth rate for assets.

71.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

72.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

73.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs, J.P. Morgan, or KBW's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning BancorpSouth's Financial Projections*

74.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for BancorpSouth provided by Cadence and BancorpSouth management and relied upon by Goldman Sachs, J.P. Morgan, and KBW in their analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for BancorpSouth which are materially misleading.

75.     The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Cadence and BancorpSouth's management provided to the Board, Goldman Sachs, J.P. Morgan, and KBW. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

76.     With regard to the "*BancorpSouth Standalone*" projections prepared by Cadence Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

        a.   ROATCE (%), including all underlying necessary metrics used to calculate this metric.

77.     With regard to the "*BancorpSouth Consensus Street Estimates*" projections prepared that BancorpSouth management directed KBW should utilize, the Preliminary Proxy Statement fails to disclose material line items for the following metrics and/or assumptions:

      a.  The specific inputs and assumptions used to determine the utilized estimated 5.0% long-term growth rate for earnings and 3.0% long-term growth rate for assets.

78.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

79.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

80.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs J.P. Morgan, or KBW's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

81.     In the Preliminary Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

82.     With respect to the *Analysis of Implied Deal Premia and Multiples*, the Preliminary Proxy Statement fails to disclose the following:

     a. The specific median EPS estimates for Cadence published by Institutional Broker Estimate System ("IBES") as of April 8, 2021 utilized; and

     b. The tangible book value ("TBV") per share, for Cadence, as of December 31, 2020;

83. With respect to the *Selected Companies Analysis for Cadence*, the Preliminary Proxy Statement fails to disclose the following:

     a. The specific median EPS estimates for Cadence and the selected companies reflected in the published by Institutional Broker Estimate System ("IBES") as of April 8, 2021 utilized.

84. With respect to the *Illustrative Present Value of Future Stock Price Analysis for Cadence on a Stand-Alone Basis*, the Preliminary Proxy Statement fails to disclose the following:

     a. The specific inputs and assumptions used to determine the utilized illustrative one year forward price to EPS multiples range of 10.5x and 12.5x;

     b. The specific inputs and assumptions used to determine the utilized discount rate of 13%;

     c. Cadence's cost of equity on a stand-alone basis; and

     d. Cadence's beta.

85. With respect to the *Regression Analysis for Cadence on a Stand-Alone Basis*, the Preliminary Proxy Statement fails to disclose the following:

     a. The median estimates for comparable companies published by IBES as of April 8, 2021;

     b. The specific inputs and assumptions used to determine the utilized Price/TBV per share multiples ranging from 1.7x (0.3x, one standard error, less than the 2022E ROATCE regression implied stand-alone Price/TBV per share multiple of 2.0x) to 2.3x (0.3x, one standard error, more than the 2022E ROATCE regression implied stand-alone Price/TBV per share multiple); and

    c.  The specific inputs and assumptions used to determine the utilized discount rate of 25%.

86.    With respect to the *Illustrative Discounted Dividend Analysis for Cadence on a Stand-Alone Basis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  The specific inputs and assumptions used to determine the utilized discount rate range of 10.5% to 15.5%;

    b.  The range of illustrative terminal values for Cadence as of December 31, 2025;

    c.  The specific inputs and assumptions used to determine the utilized illustrative price to EPS multiples ranging from 10.5x to 12.5x; and

    d.  The total number of fully diluted shares of Cadence Class A common stock outstanding.

87.    With respect to the *Selected Companies Analysis for BancorpSouth on a Stand-Alone Basis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  The specific median EPS estimates for BancorpSouth and the selected companies reflected in the published by IBES as of April 8, 2021 utilized.

88.    With respect to the *Illustrative Present Value of Future Stock Price Analysis for BancorpSouth on a Stand-Alone Basis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  The specific inputs and assumptions used to determine the utilized illustrative one year forward price to EPS multiples range of 12.5x and 14.5x;

    b.  The specific inputs and assumptions used to determine the utilized discount rate of 9.0%; and

    c.  BancorpSouth's cost of equity on a stand-alone basis.

89.    With respect to the *Regression Analysis for BancorpSouth on a Stand-Alone Basis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  Price/TBV per share multiples ranging from 1.7x (0.3x, one standard error, less than the 2022E ROATCE regression implied stand-alone Price/TBV per share

multiple of 2.0x) to 2.3x (0.3x, one standard error more than the 2022E ROATCE implied market stand-alone Price/TBV per share multiple).

90.     With respect to the *Illustrative Discounted Dividend Analysis for BancorpSouth on a Stand-Alone Basis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  The specific inputs and assumptions used to determine the utilized discount rate range of 8.0% to 10.0%;

    b.  The range of illustrative terminal values for BancorpSouth as of December 31, 2025;

    c.  The specific inputs and assumptions used to determine the utilized illustrative price to EPS multiples ranging from 12.5x to 14.5x; and

    d.  The total number of fully diluted shares of BancorpSouth common stock outstanding.

91.     With respect to the *Illustrative Present Value of Future Stock Price Analysis for Cadence Shares on a Pro Forma Basis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  The specific inputs and assumptions used to determine the utilized illustrative one year forward price to EPS multiples range of 11.5x and 13.5x;

    b.  The specific inputs and assumptions used to determine the utilized discount rate of 10.75%; and

    c.  BancorpSouth's cost of equity on a pro-forma basis.

92.     With respect to the *Regression Analysis for Cadence Shares on a Pro Forma Basis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  Price/TBV per share multiples ranging from 2.1x (one standard error less than the 2022E ROATCE regression implied pro forma Price/TBV per share multiple) to 2.7x (one standard error more than the 2022E ROATCE implied market pro forma Price/TBV per share multiple); and

b.   The specific inputs and assumptions used to determine the utilized discount rate of 14%.

93.   With respect to the *Illustrative Discounted Dividend Analyses for Cadence Shares on a Pro Forma Basis*, the Preliminary Proxy Statement fails to disclose the following:

a.   The specific inputs and assumptions used to determine the utilized discount rate range of 9.0% to 12.5%;

b.   The range of illustrative terminal values for BancorpSouth on a pro forma basis December 31, 2021 through December 31, 2025;

c.   The specific inputs and assumptions used to determine the utilized illustrative price to EPS multiples ranging from 11.5x to 13.5x; and

d.   The total number of fully diluted shares of BancorpSouth common stock outstanding, increased by the number of shares of BancorpSouth common stock anticipated to be issued in the proposed merger, as provided by Cadence management to derive a range of illustrative present values per share of BancorpSouth common stock on a pro forma basis.

94.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

95.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Cadence stockholder. As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by J.P.*
*Morgan*

96.     In the Preliminary Proxy Statement, J.P. Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

97.     With respect to the *Public Trading Multiples Analysis – Cadence Stand-Alone*, the Preliminary Proxy Statement fails to disclose the following:

   a.   The specific inputs and assumptions used to calculate the utilized multiple reference ranges of 11.3x to 14.0x and 1.54x to 1.92x.

98.     With respect to the *Dividend Discount Analysis – Cadence Stand-Alone*, the Preliminary Proxy Statement fails to disclose the following:

   a.   The range of terminal values for Cadence as of December 31, 2025;

   b.   The specific inputs and assumptions used to determine the utilized terminal next-twelve-months ("NTM") price to earnings ("P/E") multiples ranging from 10.0x to 12.0x; and

   c.   The specific inputs and assumptions used to determine the utilized discount rate range of 11.0% to 12.0%.

99.     With respect to the *Public Trading Multiples Analysis – BancorpSouth Stand-Alone*, the Preliminary Proxy Statement fails to disclose the following:

   a.   The specific inputs and assumptions used to calculate the utilized multiple reference ranges of 12.0x to 15.0x and 1.60x to 2.15x.

100.     With respect to the *Dividend Discount Analysis – BancorpSouth Stand-Alone*, the Preliminary Proxy Statement fails to disclose the following:

   a.   The range of terminal values for BancorpSouth as of December 31, 2025;

    b.  The specific inputs and assumptions used to determine the utilized terminal NTM P/E multiples ranging from 12.0x to 14.0x; and

    c.  The specific inputs and assumptions used to determine the utilized discount rate range of 10.0% to 12.0%.

101.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

102.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Cadence stockholder.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by KBW*

103.    In the Preliminary Proxy Statement, KBW describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

104.    With respect to the *BancorpSouth and Cadence Selected Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  The specific metrics for all compared companies.

105.    With respect to the *BancorpSouth Dividend Discount Model Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  The long term growth rates for BancorpSouth utilized and the specific inputs and assumptions used to determine them;

    b.   The specific inputs and assumptions used to determine the utilized discount rate range of 10.0% to 14.0%;

    c.   The underlying bases for the assumption that BancorpSouth would maintain a tangible common equity to tangible assets ratio of 8.0% and would retain sufficient earnings to maintain that level;

    d.   BancorpSouth's terminal values; and

    e.   The specific inputs and assumptions used to determine the utilized multiple range of 12.5x to 16.5x BancorpSouth's estimated 2026 earnings.

106.    With respect to the *Cadence Dividend Discount Model Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The long term growth rates for Cadence utilized and the specific inputs and assumptions used to determine them;

    b.   The specific inputs and assumptions used to determine the utilized discount rate range of 12.0% to 16.0%;

    c.   The underlying bases for the assumption that Cadence would maintain a tangible common equity to tangible assets ratio of 8.0% and would retain sufficient earnings to maintain that level;

    d.   Cadence's terminal values; and

    e.   The specific inputs and assumptions used to determine the utilized multiple range of 12.5x to 16.5x Cadence's estimated 2026 earnings.

107.    With respect to the *Pro Forma Combined Dividend Discount Model Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The long term growth rates for BancorpSouth and Cadence utilized and the specific inputs and assumptions used to determine them;

    b.   The specific inputs and assumptions used to determine the utilized discount rate range of 11.0% to 15.0%;

c. The underlying bases for the assumption that the pro forma entity would maintain a tangible common equity to tangible assets ratio of 8.0% and would retain sufficient earnings to maintain that level;

d. The pro forma entity's terminal values; and

e. The specific inputs and assumptions used to determine the utilized multiple range of 12.5x to 16.5x pro forma's estimated 2026 earnings.

108.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

109.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Cadence stockholder.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### <u>(Against the Individual Defendants)</u>

110.   Plaintiff repeats all previous allegations as if set forth in full herein.

111.   The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff.

112.   By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of the true value of his investment in Cadence.

113.   As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to Plaintiff by entering into the Proposed Transaction through a flawed and unfair process and failing to meet

their obligations to make complete and accurate disclosures regarding this process and the data and analyses underlying the Proposed Transaction.

114.    Indeed, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff all material information necessary for him to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

115.    The Individual Defendants dominate and control the business and corporate affairs of Cadence, and are in possession of private corporate information concerning Cadence's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and Plaintiff which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value without the disclosure of all proper material information.

116.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff.

117.    As a result of the actions of the Individual Defendants, Plaintiff will suffer irreparable injury in that he has not and will be able to make an informed decision with respect to the Proposed Transaction.

118.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff, all to the irreparable harm of the Plaintiff.

119.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

### SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### Against Defendant Cadence and BancorpSouth

120.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

121.   Defendant Cadence and BancorpSouth knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition, which, without such aid, would not have occurred.

122.   As a result of this conduct, Plaintiff has been and will be damaged in that he has been and will be prevented from being able to make an informed decision with respect to the Proposed Transaction.

123.   Plaintiff has no adequate remedy at law.

### THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

124.   Plaintiff repeats all previous allegations as if set forth in full herein.

125.   Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

126.   Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

127.   As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the

circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

128.    The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

129.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

130.    The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

131.    The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## FOURTH COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

132.    Plaintiff repeats all previous allegations as if set forth in full herein.

133.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

134.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

135.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Cadence's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that

the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

136.   The Individual Defendants acted as controlling persons of Cadence within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Cadence to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Cadence and all of its employees.   As alleged above, Cadence is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.   Enjoining the Proposed Transaction;

B.   In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D.   Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.   Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

F.   Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 4, 2021                             **BRODSKY SMITH**

                                                By: _____
                                                Evan J. Smith
                                                240 Mineola Boulevard
                                                Mineola, NY  11501
                                                Phone:  (516) 741-4977
                                                Facsimile (561) 741-0626

                                                *Counsel for Plaintiff*